UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

DAWN DUNKERLY,

    Plaintiff,

v.

ENCOMPASS INSURANCE COMPANY,

    Defendant.

Civ. No. 16-8439 (KM)(JBC)

AMENDED OPINION*

## MCNULTY, U.S.D.J.:

The plaintiff, Dawn Dunkerly, brings this action against Encompass Insurance Company ("Encompass") benefits under a homeowner's insurance policy in addition to those already paid. Now before the Court is the motion of Encompass for summary judgment. For the reasons expressed herein, the motion will be granted.

### I. BACKGROUND

Dawn Dunkerly's father, Jerry DiGiralamo, had a homeowner's insurance policy from Encompass. (ECF no. 11).[1] On March 28, 2011, a fire completely destroyed DiGiralamo's home and the city required the structure to be demolished. (Pl Br. 1). The structure was a pre-existing non-conforming use, and the current zoning ordinance did not permit the building to be reconstructed without obtaining a variance. (*Id.*). After her father and mother passed away, Dunkerly became the executrix of their estate. (*Id.*)[2]

---

\* This amended opinion corrects editing errors. There is no change of substance.

1 Citations to the record are abbreviated as follows:
 Def. Br. = Defendant's brief in support of summary judgment (ECF no. 9)
 Pl. Br. = Plaintiff's brief in opposition to summary judgment (ECF no. 11)
 Reply Br. = Defendant's reply brief

2 Neither death was related to the fire. (Def. Br. 2).

1

Encompass disbursed $408,870.06 under DiGiralamo's policy. (Def. Br. 4). This includes a $341,521.20 payment to DiGiralamo for the actual cash value of the house, net of a $500 deductible. (Def. Br. 4). Plaintiff believes that she is entitled to an additional $108,006.70. That figure represents the difference between the actual cash value of the house that was destroyed and the (higher) replacement value of the house. (Pl. Br. 1).

The dispute centers on two provisions of DiGiralamo's policy with Encompass, which state, in relevant part:

> 3. We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss according to the replacement cost provisions above....
> 5. You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage on an actual cash value basis. You may then make claim within one year after loss for any additional liability on a replacement cost basis.

(Reply Br. Ex. B).

Dunkerly, as the executrix of the estate, believes that, under the quoted provision of the policy, she is entitled to full reimbursement for the replacement value of the house, minus reimbursement for the actual value of the house, already paid by the insurer. She brought this action to recover the difference: $108,006.70

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a Court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. County of Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998). The

2

moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof ... the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations ... and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, ... there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23).

In deciding a motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the fact finder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

The summary judgment standard, however, does not operate in a vacuum. "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

## III. DISCUSSION

Dunkerly argues that summary judgment is improper because (a) the parties dispute the interpretation of the relevant provision of the insurance policy, and (b) under section 5 of the insurance policy, the insureds made an uninformed waiver of their rights.

### A. The Insurance Policy Provision

Dunkerly claims that summary judgment is improper because the parties dispute the proper interpretation of the insurance policy. (Pl. Br. 2-3). Dunkerly makes two arguments here. First, she says that the parties' difference of opinion over meaning of the insurance policy is a material dispute of facts that precludes summary judgment. (*Id.*). Second, she claims that since insurance policies should be viewed most favorably to the insured party, the policy should be interpreted to award her the difference between the actual cash value and the replacement value of the house. (*Id.* 3-4).

First, this difference in opinion over the insurance policy does not necessarily equate to a material dispute of fact. Interpretation of an insurance policy is a question of law. *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 674 (3d Cir. 2016). "Since insurance policies are considered contracts and contract interpretation is generally a question of law, we apply ordinary principles of contract law." *Transamerican Office Furniture v. Travelers Prop. & Cas.*, 222 F. Supp. 2d 689, 691 (E.D. Pa. 2002). True, in a particular case the interpretation may depend on underlying, disputed facts, but not so here. The parties agree on the facts of the case. Rather, the parties dispute the legal consequences of the words of the policy.

Second, a plain reading of the insurance policy supports Encompass's position and cannot be read to support Dunkerly's position. It is true that

4

purchasers of insurance "are entitled to the broad measure of protection necessary to fulfill their reasonable expectations." *Kievit v. Loyal Protective Life Ins. Co.*, 170 A.2d 22, 26 (N.J. 1961). "They should not be subject to technical encumbrances or to hidden pitfalls and their policies should be construed liberally in their favor to the end that coverage is afforded 'to the full extent that any fair interpretation will allow.'" *Id.* (citing *Danek v. Hommer*, 100 A.2d 198, 202 (N.J. Super. Ct. App. Div. 1953)). Again, a truly ambiguous policy might require exploration of surrounding facts, but not so here. Insurance policies are construed in favor of policy purchasers only "to the full extent that any fair interpretation will allow." Where there is no ambiguity in insurance contracts, New Jersey courts enforce their terms as written.

For example, in *Di Orio v. New Jersey Manufacturers Insurance Co.*, a son was driving his father's business car, and the family's insurance policy clearly excepted cars not owned by the family. 398 A.2d 1274, 1279 (N.J. 1979). This provision was intended to prevent an insured from obtaining coverage for multiple cars when paying insurance for only one car. *Id.* at 1280. An infant was injured in an automobile accident and the insurance company refused to pay the claim. *Id.* at 1276. The New Jersey Supreme Court held that the "non-owned car" provision was unambiguous and therefore applied it as written. *Id.* at 1280.

In *Zacarias v. Allstate Insurance Co.*, the New Jersey Supreme Court set forth two rules for the identification of ambiguities and interpretation of insurance policy provisions:

> First, in enforcing an insurance policy, courts will depart from the literal text and interpret it in accordance with the insured's understanding, even when that understanding contradicts the insurer's intent, if the text appears overly technical or contains hidden pitfalls, cannot be understood without employing subtle or legalistic distinctions, is obscured by fine print, or requires strenuous study to comprehend.
>
> Second, the plain terms of the contract will be enforced if the "entangled and professional interpretation of an insurance underwriter is [not] pitted against that of an average purchaser of

5

> insurance," or the provision is not so "confusing that the average policyholder cannot make out the boundaries of coverage."

775 A.2d 1262, 1268 (N.J. 2001) (citations omitted) (paragraph breaks added). Here, the insurance policy does not obfuscate with complex language, legal terms, or fine print. Nor does it contradict an average purchaser's expectation.

Under the first *Zacarias* rule, I must find that the relevant insurance provision is clear and unambiguous:

Section (3) provides that the insurance company "will pay no more than the actual cash value of the damage until actual repair or replacement is complete." (Reply Br. Ex. B). The language is clear and non-technical. Dunkerly admits that she has not rebuilt the building. (Reply Br. Ex. C, 29:1-21). Moreover, she agreed in her deposition that, under the relevant provision, unless and until the structure is rebuilt, the replacement cost would not be paid. (*Id.* 41:13–42:16).

Section (5) imposes a clear time limit on claims for replacement value. It provides that the parties may "make claim under this policy for loss and damage on an actual cash value basis" and then "make claim within one year after loss for any additional liability on a replacement cost basis." (Reply Br. Ex. B). The DiGiralamo family, as insureds, made a claim under Section (5). DiGiralamo received money for the actual cash value of the home. The estate thus had one year to make a supplemental claim on a replacement cost basis. The estate now seeks to receive additional benefits on a replacement cost basis, but without fulfilling the necessary requirements: they did not replace the structure and they did not act within the one-year deadline.[3] This contradicts the clear and non-technical language of Section (5), which contains no pitfalls or traps for the unwary.

---

3    In fact, five years after the fire, Dunkerly admitted that there were not even any plans to rebuild the structure. (Def. Br. Ex. C., 42:13–44:17).

Under the second *Zacarias* rule, too, I must find that the insurance company's interpretation is not pitted against the understanding of an average purchaser:

A plain reading of the text is consistent with the insurance company's reading. Even Dunkerly seems to agree with the insurance company's interpretation. (Reply Br. Ex. C, 41:13–42:16). Rather, she disagrees with the provision itself. As she states in her deposition, "Why wouldn't the estate still be able to take that money, just because we didn't rebuild?" (*Id.* 29:1-3).

The New Jersey courts agree with the insurer's plain-language reading of this provision. In *Danzeisen v. Selective Insurance Co. of America*, the court examined a substantively similar insurance policy provision. 689 A.2d 798, 799 (N.J. Super. Ct. App. Div. 1997). *Danzeisen* held that the insurance company was not required to pay on a replacement cost basis until the lost or damaged property was actually repaired or replaced. The court found that the provision was not ambiguous, was not obfuscated by complexities, and did not contradict the understanding of the average purchaser. *Id.*

A plain reading of the insurance provision does not support Dunkerly's claim; the provision is not encumbered by complexities; and the insurance company's interpretation did not contradict the understanding of an average purchaser. I interpret this provision to unambiguously bar the estate from collecting the replacement value, since the insureds did not rebuild the structure, timely or otherwise.

### B. Waiver

Dunkerly also argues that the enforcement of section (5) would constitute an improper waiver of rights. (Pl. Br. 4). To be legally binding, a waiver must be "a voluntary act," as it "implies an election by the party to dispense with something of value, or to forego some advantage which he might at his option have demanded and insisted on." *Allstate Ins. Co. v. Howard Sav. Inst.*, 317 A.2d 770, 774-75 (N.J. Super. Ct. Ch. Div. 1974). Here, however, the estate did not waive any rights that it possessed as against the insurance company.

7

Dunkerly seems to argue that her estate, by accepting benefits for the actual value of the house, unknowingly waived the right to seek replacement cost benefits. (Pl. Br. 4-5). The exercise of an option that is explicitly provided for in a policy is not generally viewed as a waiver.

In any event, no such claim could be sustained on this record. Dunkerly honestly admitted in her deposition that her family reviewed the replacement cost provisions with the insurance agent, a public adjuster, and her parents' counsel. (Def. Br. Ex. C., 27:22–28:20, 47:5–48:11). They did not "waive" their rights by accepting the actual cash value. They knew by the plain terms of the agreement and their discussions with the relevant advisers that they would accept the actual cash value for the home now and, if they replaced the structure, could seek additional replacement benefits within one year. They did not replace the structure, and have no plans to do so.

The estate did not waive any rights under the policy and the enforcement of section (5) does not constitute improper waiver.

### IV. CONCLUSION

For the foregoing reasons, defendant Encompass's motion for summary judgment is GRANTED. An appropriate order accompanies this opinion.

Dated: October 27, 2017

**KEVIN MCNULTY**
**United States District Judge**

8